Denio, Ch. J.
The main question arising under this very illiterate will is,” whether the testator’s granddaughter, Almira Bloodgood, afterwards Terpening, whose executor now prosecutes this action, took any estate or interest under the will. In respect to the legacy of $40, it is given in plain and explicit terms to the testator’s daughter, Caty Bloodgood, the mother of Almira; one-half of it to lie *510 paid to the legatee in one year and six months, and the other, half in two years and six months from the testator’s decease, oby the defendant, who is a devisee of valuable interests by the will. But there is this qualification in the gift to Caty, if it be a qualification, namely: “And I- order my, executors to dispose of the $40 as they shall see best for the heirs of Caty Bloodgood.” The will also devises to his four daughters, including Caty Bloodgood, whose names are given, and to the heirs of another daughter who had died, a farm in Verona, Oneida county,-of which the testator was seized of an undivided half part, and to the same persons, and to Isaac Skinner a small piece of land in Columbia, Herkimer county, in which he was seized of a half share; the land to be sold by the executors, who are to pay the proceeds to the devisees, “the money arising from the share of Caty Bloodgood to be retained by my executors, and by' them applied for the benefit of the heirs of the said Caty Bloodgood as they may think best.” The defendant was the sole acting executor. The daughter Caty had an incompetent husband at the date of will. She had one child living at the date of the will, who died before the testator, and Almira, whose executor is the present claimant, was born after the making of the will and before the testator’s death. It is difficult to apply technical rules to such a disposition. If the property is considered as given to or for the benefit of Caty, with a remainder in her heirs, or her children as a class, the remainder is a vested cue in the child living at the testator’s death, subject to open and take in other children who may come into existence before the death of the devisee, for life. If this is the construction, the plaintiff, if he fully represent Caty, would have no present right to call the defendant to account, for Caty being yet living, the remainder has not vested in possession, though it has in interest; But I think this is not the effect of the gift: if even the language were to that effect, the rule in Shelley’s Case, *511 which, had not been abolished when this will was. made, would apply and give the fee to the first named devisee. The trust in the executors, as to the proceeds would not enure, for they did not take an estate in the land or in the principal of the legacy, but only a power over the proceeds. The plaintiff can therefore prevail only on the assumption that the devise was direct to and for the immediate benefit of the heirs, as a class, passing the daughter by, and giving her no estate or interest. To do this we must treat the formal bequest and devise to her as without effect or meaning, and hold that she is mentioned only as the stock upon which the term heirs is predicated. There are several objections to this, besides the improbability of the testator making provision for persons yet to come into existence, to the exclusion of a living object of his bounty. Direct provisions should not be disregarded, if any probable construction would give them a meaning. It is not said that the money or the proceeds of the land are to be paid to the heirs, but only in the case of the legacy, that the executors shall dispose of it as they shall see best for the heirs, &c., and as to the proceeds of the land, it is to be by them applied for the benefit of the heirs, &o, My opinion, upon the best reflection I can bestow on the case, is, that it was intended by the testator, and that the construction is that the gift should be held direct to the testator’s daughter Caty, but that to avoid its being imprudently spent, the executors should have a control over it, and should exercise that control in such a manner as might be most for the benefit of Caty’s family. She then had one child and might have more,- and they were to be brought up and educated. If the money was paid directly into her hands, it might be spent and she left without ability to support her children. To prevent this the executors were clothed with a discretion as to the application of the money. It is unnecessary to say what the effect of this power , would be, but it is sufficient to defeat this action that a direct gift to the child *512 ren was not intended. If the executors judged it best for the children that Mrs. Bloodgood should, have the money, I think they would be justified in paying it to her, as it seems they have done. The word heirs is certainly not used in a legal sense. I think it was used in a mere sense denoting Caty’s children or her family.
I am for affirming the judgment of the supreme court.
Johnson, J.
It is difficult, from the terms of the will; to ascertain the precise intention of the testator, in respect to the devise and bequest to his daughter Caty Bloodgood. But I am unable to see how, in any view of the case, this granddaughter of the testator can have acquired any vested right or interest, either in the legacy of $40, or in the lands devised or the proceeds thereof. Nothing is given to her in terms; and, from the entire scope and terms of the will, I am entirely satisfied that she was only indirectly and incidentally the object of the testator’s bounty. Both the bequest and the devise are directly to the testator’s daughter Caty Bloodgood. The terms are, “unto Caty Blood good the sum of $40, to be paid at the times aforesaid”— which were, one-half in one year and a-half, and the othei half in two years and a-half. It is then added, “and which I order my executors to dispose of as they shall see best for the heirs of said Caty Bloodgood.” It is plain, from other parts of the instrument, that it was not designed by the testator that this sum should be invested for the children of Caty, as in the case of the children of his deceased daughter Hannah Myers. In regard to that bequest, the directions to invest until the children should come to the age of twenty-one, are explicit. The one in question was t® be disposed of by the executors, when paid, in a manner .most beneficial, in their judgment, to the heirs or children of Caty Bloodgood. The legal right and title were nevertheless in Mrs. Bloodgood, as it was given to her, and to no one else, but, to be disbursed by the executors, in such *513 manner as to secure "the. greatest benefit to her children. This might well be accomplished by paying it directly to Mrs. Bloodgood. An ample reason is seen for this precaution, in the evidence respecting the habits and mental condition of the husband of Caty. The object undoubtedly was to secure the fund from the possession and control of the husband, and not to. give the title to it to the grandchild. And so in regard to the devise of the land; it is to his several daughters, naming them all, except Hannah Myers, whose share is given directly to her heirs. The lands in Yerona were to be divided equally between the daughters, and those in the town of Columbia equally between them and Isaac Skinner. And the moneys arising from the sale were to be divided in the same way, and paid to his heirs aforesaid. The share belonging to the heirs of Hannah Myers was to be invested or placed at ‘interest until they should arrive at lawful age. The moneys arising fr'om the share of Mrs. Bloodgood, in case of sale, were not to be put at interest or paid over to her, or her heirs, but to be retained by the executors and by them applied for the benefit of the heirs of “ Caty Bloodgood, as they may think best.” Certainly, under this will, no estate in the land vested in this granddaughter, but it vested in the daughter of the "testator. And the title most clearly remained in her, and could be in no one else until she was divested, either by a sale and conveyance by herself, or a sale by the executors under the power conferred by the will. This power, I think, the executors could not be compelled to exercise. Unless, in their judgment, it was fit and proper that the lands should be sold, no duty to sell devolved upon them. They did not see fit to sell it, and the title to that portion of Mrs. Bloodgpod’s share, remaining unsold, is still in her. Her title to the other portion she conveyed herself, as she had the clear right to do, and received the proceeds. There having been no sale by the executor, of the lands devised under the will, he had no *514 funds in his hands from that source; for which he could be called to account. I am of the opinion, therefore, that the case was properly disposed of in the court below, and that the judgment should be affirmed.
Selden, J.
The construction given to the will in this case, by the referee and the supreme court, was correct, and the judgment appealed from should be affirmed, for the reasons given by Mr. Justice Bacon in that court.
All the judges concurring, judgment affirmed.