[S. F. No. 6018. In Bank.—August 1, 1912.]

MARTIN WHALEN et al., Petitioners, v. FRANK H. SMITH, Judge of the Superior Court of San Joaquin County, Respondent.

APPEAL FROM PART OF JUDGMENT—WHEN REVERSAL OF ENTIRE JUDGMENT IS AUTHORIZED.—There may be cases of appeals from a part of a judgment where the part appealed from is so interwoven and connected with the remainder, or so dependent thereon, that the appeal from a part of it affects the other parts or involves a consideration of the whole, and is really an appeal from the whole, and if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, has power to do that which justice

requires and may extend its reversal as far as may be necessary to accomplish that end.

ID.—PART OF JUDGMENT NOT APPEALED FROM ORDINARILY NOT AFFECTED. Ordinarily an appeal from a specific part of a judgment, authorized by section 940 of the Code of Civil Procedure, leaves the parts not appealed from unaffected, and such unaffected parts must be deemed final, being a final judgment of the facts and rights which they determine.

ID.—EXTENT OF REVIEW ON APPEAL FROM PART OF JUDGMENT.—Upon such an appeal, where the parts not appealed from are not so intimately connected with the part appealed from that a reversal of that part would require a reconsideration of the whole case in the court below, the appellate court can inquire only with respect to the portion appealed from.

ID.—ESTATE OF DECEASED PERSONS—PROCEEDING TO DETERMINE HEIRSHIP—JUDGMENT DETERMINING PERSONS INCLUDED WITHIN BEQUEST TO CLASS AND PORTIONS OF EACH—APPEAL FROM PART OF JUDGMENT—REVERSAL IN GENERAL TERMS.—Where in a special proceeding instituted under section 1664 of the Code of Civil Procedure, for the purpose of ascertaining and determining, in advance of distribution, the persons who have succeeded to the estate of a testator, and the portions bequeathed to each of them, the judgment ascertained and determined the persons included in a bequest to the testator's "brothers and sisters and their descendants," and, upon a construction of other terms of the will, further determined the portion of the estate to which they were each entitled as members of such class, an appeal taken solely from the latter portion of the judgment did not present for review any question as to who were properly included in such class, and where such question was not considered by the appellate court, a reversal of the judgment in general terms only operated as a reversal of the portion appealed from, and did not authorize the trial court to retry the question whether there were other members of such class than those included in the judgment previously rendered.

APPLICATION for a Writ of Mandate directed to Frank H. Smith, Judge of the Superior Court of San Joaquin County.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Petitioners.

Max Crimm, for Respondent.

SHAW, J.—This is a proceeding to compel the defendant, as judge of the superior court, to render judgment in the matter of the action to determine heirship in the estate of George Roach, deceased, entitled *Martin Whalen et al.* v. *Joshua B. Webster et al.*, in accordance with the decision of this court on appeal therein, as reported in 159 Cal. 260, [113 Pac. 373], and without taking further evidence upon the issue as to the number of surviving children of Thomas Roach, a deceased brother of said George Roach.

The contention of the petitioners is that the appeal in *Whalen* v. *Webster* was from a part, only, of the judgment in the proceeding, a part which presented but one question—namely, whether the language of the will of George Roach gave to the descendants of his brothers and sisters one-half of his estate or only one-fourth thereof, that all other matters determined by the judgment remained unaffected and are finally adjudicated, and, hence, that this court on said appeal, had no jurisdiction to reverse the whole judgment, or any part of it except the part appealed from, and that the mandate of reversal, although general in terms, can apply only to the part appealed from. And, further, they claim that, even if the supreme court had jurisdiction to reverse the entire judgment on appeal from a part only, yet, in view of the record in the case, the nature of the proceeding, the judgment rendered and the narrow question presented by the appeal, the general mandate should not be construed to apply to the whole judgment in the proceeding below, but only to that part from which the appeal was taken.

There are doubtless cases of appeals from a part of a judgment where the part appealed from is so interwoven and connected with the remainder, or so dependent thereon, that the appeal from a part of it affects the other parts or involves a consideration of the whole, and is really an appeal from the whole, and if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, must have power to do that which justice requires and may extend its reversal as far as may be deemed necessary to accomplish that end. The code provides that a party may appeal from a specific part of a judgment. (Code Civ. Proc., sec. 940.) Ordinarily such an appeal would leave the parts not appealed from unaffected, and it would logically follow that such un-

affected parts must be deemed·final, being a final judgment
of the facts and rights which they determine.   The decisions
are to the effect that upon such an appeal where the parts
not appealed from are not so intimately connected with the
part appealed from that a reversal of that part would require
a reconsideration of the whole case in the court below, the
court upon such partial appeal can inquire only with respect
to the portion appealed from.   Thus, in *Early* v. *Mannix,* 15
Cal. 150, it was said that a plaintiff in forcible entry could
appeal from an order denying his motion for treble damages
and, in the mean time, enforce his judgment for restitution
of the premises.   In *Pacific Mutual L. I. Co.* v. *Fisher,* 106
Cal. 237, [39 Pac. 758], it was said that the supreme court
is not at liberty to review a part of a judgment which is
not appealed from.   In *Estate of Burdick,* 112 Cal. 391, [44
Pac. 734], the court below made a decree, upon the executor's
petition, settling his final account and making distribution
of the estate.   He appealed from all of the decree except
the part thereof settling his final account.   Upon the appeal
he applied to review the order settling the final account, but
the court refused to consider the question of its accuracy,
saying: "We must not interfere with it.   To attempt to do
so would be an arbitrary proceeding without authority."   In
*Ricketson* v. *Richardson,* 26 Cal. 154, there were several de-
fendants and one alone appealed.   A reversal as to all of
the defendants was asked.   The error consisted of a defective
service of summons and affected the appellant only.   A re-
versal as to the other defendants was refused, the court say-
ing that it was bound to presume that there was no error as
to them since they had not taken any appeal.   In *Kelsey* v.
*Western,* 2 N. Y. 505, the court said: "It is well settled that
only that part of a decree which is appealed from is brought
before the appellate court for review."   In *Bush* v. *Mitchell,*
28 Or. 92 [41 Pac. 155], the court, referring to an appeal
from a part of a judgment quoted the following language
from *Shook* v. *Colohan,* 12 Or. 243, [6 Pac. 503]: "The trial
of the suit anew would be confined to a trial of the case
affecting the part of the decree specified in the notice of
appeal."   In that state the appellate court had power to try
the suit anew.   The following cases recognize and apply the
general principle that an appeal from a distinct and inde-

pendent part of a judgment does not bring up the other parts for review in the appellate court, and that a reversal of the part appealed from does not affect the portions not dependent thereon, but that they will stand as final adjudications: *Ikerd* v. *Postlewhaite,* 34 La. Ann. 1235; *Nelson* v. *Hubbard,* 13 Ark. 253; *Scutt's Appeal,* 46 Conn. 38; *Ervin* v. *Collier,* 3 Mont. 189; *Hess* v. *Winder,* 34 Cal. 270; *Sands* v. *Codwise,* 4 Johns. (N. Y.) 602, [4 Am. Dec. 305]; *In re Davis,* 149 N. Y. 548, [44 N. E. 185]; *Leavison* v. *Harris,* 14 S. W. (Ky.) 343; *Meadow etc. Co.* v. *Dodds,* 6 Nev. 261; *Robertson* v. *Bullions,* 11 N. Y. 245; *Moerchen* v. *Stoll,* 48 Wis. 307, [4 N. W. 352].

This principle is decisive of the case. If the decree appealed from in *Whalen* v. *Webster* had been a decree distributing the estate, it might plausibly be argued that the distribution was the final judgment and that the decision as to the persons who are the heirs at law was a mere finding of fact, upon which the final judgment followed as matter of law, in which case a general order of reversal would open the whole matter for a new trial as to the facts. But that proceeding was instituted under section 1664 of the Code of Civil Procedure. This section provides a special proceeding for the purpose of ascertaining and determining, in advance of distribution, the persons who have succeeded to the estate and the portions inherited by or devised to each of them. Upon the trial thereof the court must "determine the heirship to said deceased, the ownership of his estate, and the interest of each respective claimant thereto or therein, and persons entitled to distribution thereof." No other judgment is to be rendered and no disposition whatever is to be made of the estate. It is a determination, first, of the persons entitled as heirs, devisees, or legatees, or as their successors, if any have died; and, second, the interest of each one in the estate of the decedent.

The will of George Roach gave an interest in his estate, after the death of his wife, to be equally divided among his brothers and sisters or their descendants. The petition of Whalen and others, plaintiffs in the proceeding, alleged: 1. That the decedent had only one brother and one sister, both of whom were dead, and that plaintiffs were the only descendants; and 2. That, as such, they were entitled to one-

half of the estate under the will. The heirs and successors of the widow of the decedent appeared and answered, denying that plaintiffs were descendants of the brother and sister, and claiming that they, as heirs and successors of the widow, were entitled to succeed to three-fourths of the estate. The judgment therein declared: 1. That the plaintiffs were the devisees and heirs at law of Roach, the descendants of his brothers and sisters referred to in his will and the persons entitled to take as devisees under his will; 2. That each of them was entitled to a specific interest, the aggregate of all of them being only one-fourth of the estate; and 3. That certain named defendants, as successors of the widow, were entitled to the remaining three-fourths. There is nothing in the record to indicate that there was any claim that there were other descendants of the brothers and sisters. The principal dispute was upon the question of law whether the fourth clause of the will gave the plaintiffs one-half of the estate, or only one-fourth thereof. The plaintiffs appeal only from that part of the judgment which declared that they were entitled to take only one-fourth and that certain defendants were entitled to three-fourths of the estate. No appeal was taken from the part declaring that the plaintiffs were persons entitled as descendants of the brother and sister to take as devisees under the will. The question whether or not said brother and sister left other descendants and whether or not there were other brothers and sisters was in effect determined in the negative by the judgment. The plaintiffs were satisfied with that determination, no one appeared to dispute or question it, and its accuracy was not reviewed, considered or discussed by this court in its opinion on the appeal, nor was it presented for review by the record. The only question discussed or decided was whether the fourth clause disposed of one-half of the estate or one-fourth thereof. The decision was that it gave one-half, and the judgment on that subject was accordingly reversed. The mandate did not go into specific particulars, but consisted simply of the words, "The judgment is reversed." The part of the judgment appealed from determined no question of law except the proper construction of the will. No question of fact was involved in the appeal. The determination of the construction of the will did not require any inquiry concerning the persons who were

entitled as members of the class described as descendants of the brothers and sisters of the decedent. The court was therefore without authority to consider the latter question, and it did not make any attempt to do so. In view of these considerations the words of the mandate should be understood and construed to refer only to the part of the judgment appealed from, the part which the supreme court had jurisdiction to review, and to reverse that part only, without affecting the other parts not specified in the notice. It follows that the court below has no authority to retry the question whether there were other descendants of the brothers and sisters than those included in the decree previously rendered. The decision left no matter of fact to be determined, and the only duty of the court below upon the going down of the *remittitur* was to enter judgment in the proceeding in accordance with the facts previously found and with the decision of the supreme court on appeal.

It is therefore ordered by the court that a writ of mandate issue, directing the superior court of San Joaquin County to enter judgment in the proceeding of *Whalen* v. *Webster* upon the facts found, in accordance with the opinion of the supreme court, and without proceeding to retry any issues of fact determined upon the former hearing in that court.

Angellotti, J., Sloss, J., Lorigan, J., and Beatty, C. J., concurred.

HENSHAW, J., dissenting.—I dissent. The *power* of this court to reverse the whole of a judgment when a part only has been appealed from is conceded by the prevailing opinion to exist.

The judgment delivered by this court in *Whalen* v. *Webster,* 159 Cal. 260, [113 Pac. 373], is in the following language: "The judgment is reversed." Language so plain and so free from ambiguity neither requires explanation nor permits construction. It either means what it says or it means nothing. It follows, therefore (the power of the court so to do being conceded), that this court deliberately reversed not a part but the whole of the judgment appealed from, for, as is said in *Glassell* v. *Hansen,* 149 Cal. 511, [87 Pac. 200], where a similar question was presented: "In reversing the

case this court might have directed what issues should again be tried, and what should be deemed finally settled by the first trial; however, it did not do so, and the judgment was merely in the general terms 'the judgment and order are reversed.' This clearly left the whole case to be tried anew, as if it had not been tried before. (*Falkner* v. *Hendy,* 107 Cal. 54, [40 Pac. 21].)" In *Cowdery* v. *London etc. Bank,* 139 Cal. 298, [96 Am. St. Rep. 115, 73 Pac. 196], this court, in effect, refused to put any construction upon a judgment such as the one here under consideration or to attempt to modify its plain meaning in any way. The judgment of this court in the Cowdery case was: "The judgment . . . is reversed and the cause remanded, with directions that the trial court enter judgment in accordance with the views here expressed." Says this court: "The legal effect of the order of the supreme court was to reverse and vacate the judgment, and not merely to modify it. Upon a decision of the supreme court that there was material error in the action of the court below, that court may direct the character of the subsequent proceedings in the lower court, and its mandate will vary according to its views as to the proper course to be pursued. It may conclude not to reverse the judgment, but to modify it, by eliminating some portion, or by adding something to it, leaving the remaining part of the judgment below to stand affirmed and in full force and effect from the date of its original entry or rendition; or it may reverse the judgment, which means to entirely vacate it, and may remand the cause for a new trial; or if a new trial is not necessary, it may upon the reversal remand it, with directions to the lower court to enter a particular judgment."

What this court is here doing is changing in essential particulars a judgment which it has solemnly given, which judgment by lapse of time has passed from its control and become an absolute finality. It is doing this under the guise of construing language so plain as to forbid construction. The direct consequence, the legal effect of this is to impair without warrant of law the stability and security of every judgment which this court has rendered. If this court in one case can say that its formal decree reversing the whole of the judgment of a trial court means merely the reversal of some portion of that judgment, it may say so in any case.

The judgment which this court rendered in the 159th California was either mistaken or not mistaken. If it was not mistaken there is no need for its correction. If it was mistaken this is not a legal method for its correction. Nothing but hopeless confusion in the law can follow if its highest interpreters under conditions such as those here present shall be permitted to say that their own deliberately chosen language does not mean that which alone the words must mean to any comprehending mind. I, therefore, dissent under the conviction that the prevailing opinion and judgment are not alone without the sanction of the law, but are a dangerous innovation upon the law.

Melvin, J., concurred in this dissenting opinion.