Filed 4/15/21  Sorice v. Johnson & Johnson, LLP CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LEANDRO SORICE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHNSON & JOHNSON, LLP, et al,<br><br>        Defendants and Appellants. | B300453<br><br>(Los Angeles County Super. Ct. No. 19STCV14785) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Randolph Hammock, Judge.  Reversed and remanded with directions.

Johnson & Johnson, Douglas L. Johnson and Ronald P. Funnell, for Defendants and Appellants.

Sall Spencer Callas & Krueger, Michael A. Sall, Suzanne Burke Spencer, and Stephanie M. Brault, for Plaintiff and Respondent.

# I.    INTRODUCTION

Plaintiff Leandro Sorice sued his former attorneys,[1] claiming they collected an excessive fee from the proceeds of a settlement.  Defendants moved to compel arbitration of the fee dispute, but the trial court denied the motion, concluding that the fee agreement containing the arbitration clause was voidable at plaintiff's option under Business and Professions Code section 6148.[2]

On appeal from the order denying the motion, the Johnson defendants contend, among other things, that the trial court erred by determining the voidability issue on the merits.  According to the Johnson defendants, that issue had been reserved for determination by the arbitrator under the delegation clause in the parties' arbitration agreement.  We agree and therefore reverse the order denying the motion to compel arbitration and remand the matter for further proceedings.

---

[1]     Plaintiff's former attorneys are defendants Johnson & Johnson, LLP (the Johnson firm), Douglas L. Johnson (attorney Johnson), The Hamideh Firm, P.C. (the Hamideh firm), and Bassil A. Hamideh (attorney Hamideh).  When we discuss the proceedings in the trial court, those four parties will be referred to collectively as defendants.  But, as explained below, only the Johnson firm and attorney Johnson are parties to this appeal.  Thus, when we discuss the parties' contentions and arguments on appeal, we will refer to appellants as the Johnson defendants.

[2]     All further statutory references are to the Business and Professions Code, unless otherwise indicated.

## II.    BACKGROUND

A.    *Plaintiff's Retention of the Hamideh Firm*

In September 2016, plaintiff contacted the Hamideh firm regarding a potential litigation against a clothing company, Trendy Butler, Inc., arising from the company's unauthorized use of plaintiff's image or likeness (the Trendy Butler action).  That same day, attorney Hamideh e-mailed plaintiff a proposed fee agreement which plaintiff signed and returned by e-mail.

The three-page agreement, which was in letter format on the Hamideh firm's letterhead, set forth, among other things, the attorney fees to which the firm would be entitled in return for services rendered in the Trendy Butler action:  "As we have discussed . . . we are prepared to represent you in this matter on a contingency basis.  Any and all costs incurred from the representation shall be reimbursed out of any proceeds that we may recover for you.  For our fee, if the matter is resolved before a [c]omplaint is filed, we will receive forty percent (40%) of the gross recovery.  However, if this matter is not resolved prior to litigation, and a decision is made to file a [c]omplaint and pursue litigation, our fee shall then be forty-five percent (45%) of the gross recovery.  Should this matter proceed to a judgment, verdict, settlement, or award in your favor, we shall receive the greater of our percentage contingency fee <u>or</u> the *attorneys' fee at the time of the verdict, settlement, or award*.  For example, if the attorneys' fees are greater than forty-five percent (45%) of the judgment, settlement, or award, we shall receive our advanced costs and attorneys' fees and you shall receive one hundred percent (100%) of the amount awarded to you in the case minus

any costs not reimbursed by defendant or ordered by the [c]ourt." (Italics added.) The fee agreement did not include a description of an hourly rate, statutory fees, or flat fees.

The agreement gave the Hamideh firm sole discretion to associate other attorneys to assist the firm in the Trendy Butler action. "You agree that [the Hamideh firm] may, in our sole discretion, associate other counsel to assist us in the institution, maintenance, prosecution, settlement, or compromise of your [m]atter. If [the Hamideh firm] associates in additional counsel, that law firm shall be [the Johnson firm]. Compensation of the associated counsel is the sole responsibility of [the Hamideh firm] and you shall incur no obligation to pay fees in excess of those set forth in this agreement. You further authorize us to share our [a]ttorneys' fees with associated counsel. The division of fees shall be 66 2/3% of all attorneys' fees in the case to [the Johnson firm] and 33 1/3% of all attorneys' fees in the case to [the Hamideh firm]."

On the last page of the fee agreement, the parties agreed to arbitrate disputes arising under the agreement as follows: "Any and all disputes arising in connection with this agreement or the services provided pursuant to this agreement, including any claims of malpractice or breach of fiduciary duty, shall be governed by the laws of the State of California and resolved by binding arbitration in Los Angeles pursuant to JAMS' comprehensive rules before a single retired Los Angeles Superior Court Judge. By agreeing to do so, we are waiving a right to trial in a court and by a jury and any right of appeal. The arbitrator's decision shall be in writing and contain a statement of reasons for the decision." Rule 11(b) of the JAMS "Comprehensive Arbitration Rules & Procedures," effective July 1, 2014, provided:

"Jurisdictional and arbitrability disputes, *including disputes over the formation, existence, validity, interpretation or scope of the agreement* under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (Italics added.)

The fee agreement was signed on behalf of the Hamideh firm by attorney Hamideh. Although the fee agreement expressly referred to the Johnson firm as potential associated counsel, neither the Johnson firm nor attorney Johnson signed the agreement.

B.    *The Trendy Butler Action*

On April 27, 2017, defendants filed a first amended complaint on behalf of plaintiff in the Trendy Butler action. Defendants represented plaintiff in that matter through May 2018, when it settled on a confidential basis following mediation.

C.    *Instant Action*

On April 26, 2019, plaintiff filed this action against defendants, alleging causes of action for quantum meruit, breach of fiduciary duty, and declaratory relief. Plaintiff sought, among other things, to recover a portion of the fees paid to defendants under the alternative "attorneys' fee" provision of the fee agreement and a declaration that the fee agreement was void.

D.    *Motion to Compel Arbitration*

On July 1, 2019, defendants filed a motion to compel arbitration, arguing, among other things,[3] that the delegation clause in the parties' fee agreement required that any disputes about the validity and enforceability of the arbitration clause be determined by the arbitrator.  In support of the motion, attorney Hamideh submitted a declaration confirming that he mailed a fully executed copy of the fee agreement to plaintiff.

Plaintiff opposed the motion.  He argued that the fee agreement was void as illegal because it did not adequately specify the basis of compensation as required by sections 6147 and 6148 and defendants did not provide plaintiff with a fully executed copy of the agreement.  Plaintiff additionally argued that:  (1) the arbitration agreement was governed by the California Arbitration Act (CAA) not the FAA; (2) the illegality of the agreement must be determined by the trial court; (3) the defendants who did not execute the fee agreement were not parties to that agreement and thus lacked standing to enforce it; and (4) the claims against the Johnson firm and attorney Johnson were outside the scope of the arbitration agreement.

In their reply brief, defendants argued that the fee agreement was not illegal but rather, at best, voidable under the express terms of sections 6147 and 6148.  They also asserted that the arbitration clause was governed by the FAA, that the Johnson defendants had standing to enforce it as either agents or third-party beneficiaries, and that the associated attorneys were

---

[3]    Defendants maintained that the arbitration clause in the fee agreement was governed by the Federal Arbitration Act (FAA).

not required to have a separate fee agreement with plaintiff under sections 6147 and 6148.

The trial court conducted a hearing on the motion on July 31, 2019, and August 21, 2019. At the conclusion of the hearing, the court issued a written order denying defendants' motion to compel arbitration. The court found that the delegation clause "constitute[d] a clear and unmistakable agreement to have the arbitrator determine the existence, scope, and validity of the arbitration agreement, including its proper parties[.]" The court nonetheless decided that plaintiff's challenge to the validity of the fee agreement itself was "not an issue that ha[d] been delegated to the arbitrator." Thus, the court concluded that it, rather than the arbitrator, must "consider whether the fee agreement itself is enforceable." The court thereafter concluded that the agreement did not comply with section 6148 because it did not include the basis of the attorney's hourly compensation and was thus "voidable at Plaintiff's option."[4] The court continued, "[b]ecause the fee agreement containing the arbitration agreement is void, the Court DENIES the motion to compel arbitration."

## III. DISCUSSION

The Johnson defendants contend that pursuant to the delegation clause in the fee agreement, the arbitrator, rather

---

[4]     The court, however, rejected plaintiff's contention that the fee agreement was void because he did not receive a fully executed copy of the agreement, finding that his declaration was not credible on this point.

than the trial court, should have decided the enforceability of the fee agreement. We agree.

A.    *Standard of Review*

Our review of the trial court's ruling on the "who decides" question requires us to interpret the parties' arbitration agreement. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 243 ["we must examine the parties' agreements to determine what they say concerning the 'who decides' question"].) "When 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review.' [Citation.] Thus, in cases where 'no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration.' [Citation.]" (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707.)

B.    *Delegation Clauses*

"Under both federal and state law,[5] arbitration agreements are valid and enforceable, unless they are revocable

---

5    "'In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA] . . . .' [Citation.] . . . [¶] 'California courts often look to federal law when deciding arbitration issues under state law." [Citation.] They have specifically looked to the FAA when considering delegation clauses [citation] and have long held that the rules governing these clauses are the same under both state and federal law[.] [Citations omitted.]" (*Tiri v. Lucky*

8

for reasons under state law that would render any contract revocable.  (9 U.S.C. § 2; Code Civ. Proc., § 1281; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 . . . .)"  (*Tiri, supra*, 226 Cal.App.4th at p. 239, original fns. omitted.)

"Parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement.  (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 . . . .)  They 'can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration.'  (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286 . . . .)  . . .  [¶]  There are two prerequisites for a delegation clause to be effective.  First, the language of the clause must be clear and unmistakable.  (*Rent-A-Center* [*W., Inc. v. Jackson* (2010)] 561 U.S. [63,] 69, fn. 1.)  Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability.  (*Id*. at p. 68; [citation].)"  (*Tiri, supra*, 226 Cal.App.4th at pp. 241–242.)

"[W]hen a party is claiming that an arbitration agreement is unenforceable, it is important to determine whether the party is making a specific challenge to the enforceability of the delegation clause or is simply arguing that the agreement as a whole is unenforceable.  If the party's challenge is directed to the agreement as a whole—even if it applies equally to the delegation clause—the delegation clause is severed out and enforced; thus, the arbitrator, not the court, will determine whether the agreement is enforceable."  (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559–1560.)

---

*Chances, Inc.* (2014) 226 Cal.App.4th 231, 239-240, original fns. omitted (*Tiri*).)

C.    *Analysis*

1.    Enforceable Delegation Clause

Under the authorities discussed above, unless the language of the delegation clause was not clear and unmistakable or the clause itself was revocable under state contract defenses such as fraud, duress, or unconscionability, it was separately enforceable. Plaintiff raises no challenge to the delegation clause but instead maintains that the fee agreement, in its entirety, was voidable at his election. As we explain above, the enforceability of the fee agreement is a matter to be decided by the arbitrator, not the court. (*Malone v. Superior Court*, *supra*, 226 Cal.App.4th at pp. 1559–1560.)

Plaintiff's citation to *Sheppard, Mullin, Richter, & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59 (*Sheppard Mullin*) is inapposite. The court in *Sheppard Mullin* did not consider the enforceability of a delegation clause on a motion to compel arbitration. Instead, the court considered whether, under Code of Civil Procedure section 1286.2, an arbitrator's award should be vacated because the arbitration had been "undertaken to enforce a contract that [was] 'illegal and against the public policy of the state.'" (*Sheppard Mullin, supra*, 6 Cal.5th at p. 73.) Thus, its holding has no application to the issue at hand, that is, whether the delegation clause is severable and enforceable. (*See, e.g. Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) 586 U.S. __, 139 S.Ct. 524, 527, 530 [rejecting argument that because the FAA provides "for back-end judicial review of an arbitrator's decision if an arbitrator has 'exceeded' his or her 'power[,]' . . . the court at the front end should also be

10

able to say that the underlying issue is not arbitrable," because it is not the court's role to "redesign the statute"].)

The facts of *Sheppard Mullin, supra*, 6 Cal.5th 59 are further distinguishable because, in that case, a law firm had entered into an engagement agreement with a client while simultaneously representing another client with an adverse interest and without informing either client about the conflict. (*Id.* at pp. 80–81.) Because the engagement agreement could not be performed without violating the Rules of Professional Conduct, the court concluded that it was void as against public policy. (*Sheppard Mullin, supra*, 6 Cal.5th at pp. 79–80.) Here, plaintiff's claim of illegality is directed at defendants' alleged failure to comply with sections 6147 and 6148, which sections, by their express terms, render a fee agreement voidable, rather than void.[6] Thus, unlike the ethical conflict in *Sheppard Mullin, supra*, 6 Cal.5th 59—which tainted the entire engagement agreement and made the law firm's representation of the client under it illegal from the outset—the alleged noncompliance with

---

[6] "'A void contract is without legal effect. [Citation.] "It binds no one and is a mere nullity." [Citation.] "Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it . . . ." [Citation.]' (*Yvanova* [*v. New Century Mortgage Corp.* (2016)] 62 Cal.4th [919,] 929.) [¶] 'A voidable transaction, in contrast, "is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." [Citation.] It may be declared void but is not void in itself. [Citation.] Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties. [Citations.]' ([*Id.*] at p. 930.)" (*Safarian v. Govgassian* (2020) 47 Cal.App.5th 1053, 1067.)

the Business and Professions Code here did not affect the primary object of the fee agreement, that is, defendants' legal representation of plaintiff in the Trendy Butler action from inception through mediation.

We are also unpersuaded by plaintiff's argument, raised for the first time on appeal, that the fee agreement was not only voidable, but void, because it violated Rules of Professional Conduct, Rule 3-300 and 3-310. We reject that argument for three reasons. First, plaintiff's contention that defendants operated under a conflict is based, in large part, on his characterization of counsel's arguments on appeal.[7] The argument of counsel, however, is not evidence. (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1173.) Second, plaintiff's argument requires that we make factual findings regarding the existence of a conflict of interest, which we decline to do. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) And finally, as we discuss above, the determination of whether the agreement is void or voidable is a matter the parties have delegated to the arbitrator.

2. Standing of the Johnson Defendants to Enforce Arbitration Agreement

Pointing to the undisputed fact that neither the Johnson firm nor attorney Johnson signed the fee agreement, plaintiff

---

[7] For instance, plaintiff argues, "[h]ere, *as [the Johnson defendants] interpret it*, the [fee agreement] created a conflict of interest between [plaintiff] and his attorneys . . . . Specifically, [the Johnson defendants] claim the alternate 'attorneys' fees' in the [fee agreement] includes hourly attorneys' fees negotiated at a mediation." (Italics added, fn. omitted.)

contends that they lack standing to enforce the arbitration agreement contained in it. Plaintiff made the same argument in his opposition below, but the trial court did not reach the merits of it due to its threshold determination of the "who decides" issue and subsequent finding that the fee agreement was voidable. Because the trial court has yet to address the standing issue, including whether the merits of it fall within the scope of the delegation clause, we remand the matter for further proceedings on that issue. (See, e.g., *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 168 [reversing dismissal and remanding matter for consideration of propriety of request for mandamus relief that trial court did not address]; *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 271 [remand for litigation of issue was appropriate when issue was rendered moot by erroneous trial court ruling].)

### 3. Reversal as to Nonappealing Defendants

Finally, we consider plaintiff's contention that because the Hamideh firm and attorney Hamideh did not appeal from the order denying their petition to compel arbitration, that order is now final as to those two defendants and the litigation in the trial court must proceed against them, regardless of whether we reverse the order as to the Johnson defendants. According to plaintiff, under these procedural circumstances, the arbitration of his claims against the Johnson defendants should not proceed due to the risk of inconsistent rulings on claims arising from the same transaction. He cites Code of Civil Procedure section 1281.2, subdivision (c) in support.

13

The Johnson defendants counter that, although the Hamideh firm and attorney Hamideh are not parties to the appeal, we can reverse the trial court's order denying arbitration in its entirety. We agree.

"As a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties. [Citations]. That general rule has an important exception, however: '[Where] the part [of a judgment] appealed from is so interwoven and connected with the remainder, . . . that the appeal from a part of it . . . involves a consideration of the whole, . . . if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, must have power to do that which justice requires and may extend its reversal as far as may be deemed necessary to accomplish that end.' (*Whalen v. Smith* (1912) 163 Cal. 360, 362 . . . [(*Whalen*)].) Although *Whalen* involved an appeal from a part of a judgment rather than, as in the case at bench, an appeal by only one of several parties, the rule discussed therein has been applied in the latter situation as well. [Citations.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 840.)

The part of the order from which the Johnson defendants appealed is so interwoven and connected with the remainder that it requires a consideration of the whole order. All four defendants below jointly filed the motion to compel based on the same briefs and evidence. Moreover, the trial court's denial of the motion was to the entirety of it, based solely on its erroneous threshold determination of the "who decides" question. Because that determination affected each defendant equally and to the

14

same extent, our power to do justice requires that the reversal must extend to all four adversely affected defendants, regardless of whether they separately appealed from the order. Our holding, however, does not foreclose a defendant, including any who did not appeal the court's denial of the motion to compel arbitration, from waiving its right to arbitrate.

## IV.   DISPOSITION

The order denying the motion to compel arbitration is reversed and remanded with directions to conduct further proceedings on that motion consistent with this opinion. In the interests of justice, no costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.