Filed 3/18/21  Petrolink, Inc. v. Lantel Enterprises CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| PETROLINK, INC., | D076583 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVVS1200383) |
| LANTEL ENTERPRISES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, John M. Pacheco, Judge.  Affirmed.

Bleau Fox, Martin R. Fox, Megan A. Childress and Elizabeth M. Martin for Plaintiff and Appellant.

Fullerton, Lemann, Schaefer & Dominick, Wilfrid C. Lemann and David P. Colella for Defendant and Respondent.

I.

INTRODUCTION

In this appeal, plaintiff and appellant Petrolink, Inc. (Petrolink) returns to this court after a previous appeal from a judgment in *Petrolink,*

*Inc. v. Lantel Enterprises* (2018) 21 Cal.App.5th 375 (*Petrolink I*). In *Petrolink I*, Petrolink appealed from a judgment in its favor on its cause of action for specific performance related to a real estate transaction.[1]

Petrolink had been leasing a parcel of undeveloped property from Lantel pursuant to a lease agreement that included a provision that gave Petrolink the option to purchase the property at fair market value. Petrolink notified Lantel of its desire to exercise the purchase option, but the parties could not agree on the fair market value of the property.

Petrolink and Lantel sued each other, each claiming that the other party had refused to complete the sale and purchase transaction. The parties were effectively seeking a judicial determination as to the fair market value of the property. While that case was pending, Petrolink continued to pay rent to Lantel pursuant to the lease agreement.

At trial, Lantel did not dispute that Petrolink had exercised the purchase option, but contended that the option in the lease was insufficiently certain to be enforced because it did not include a purchase price. In the alternative, Lantel contended that if the option was enforceable, Lantel should be the party to set the sale price. The main issue in dispute at the trial was the fair market value of the property at the time Petrolink notified Lantel of its desire to purchase the property.

A court-appointed expert provided the trial court with an independent appraisal that fell somewhere between the appraisals that the parties had

---

[1]     Although the trial court granted Petrolink the relief it sought in the original judgment in the form of an order directing specific performance of a purchase contract, the trial court refused to credit Petrolink with an offset against the purchase price for rent that Petrolink had paid after it exercised a purchase option in a lease contract. As we describe in further detail below, Petrolink's first appeal challenged the trial court's refusal to credit it with an offset for the amount of rent it paid after exercising the purchase option.

separately obtained. The trial court ultimately determined that the fair market value of the property as of August 25, 2011—the date of Petrolink's letter notifying Lantel of its desire to exercise the purchase option in the lease agreement—was $889,854. The court ordered Lantel to sell the property to Petrolink for that amount.

Petrolink had requested that the trial court grant Petrolink an offset against the purchase price for the amount of the rents that it had paid to Lantel after exercising the purchase option, but the trial court denied Petrolink's request.

Petrolink appealed from the judgment. Petrolink's only contention in *Petrolink I* was "that the trial court erred in failing to offset the rents [Petrolink] paid to Lantel through the pendency of this litigation against the purchase price." (*Petrolink I, supra*, 21 Cal.App.5th at p. 379.) In our opinion in *Petrolink I*, we concluded that Petrolink was entitled to an offset against the purchase price for the rents it had paid through the pendency of the litigation. We determined that, to the extent the trial court had denied Petrolink an offset for rents that it paid to Lantel through the pendency of the litigation, the court had "failed to account for the delayed performance of the contract for purchase and sale" by "fail[ing] to place the parties in the positions in which they would have been at the time the sale and purchase contract should have been performed." (*Ibid.*) We therefore directed the trial court "to determine the reasonable date on which the contract for purchase and sale should have been performed, and . . . to consider what financial

3

adjustments must be made in order to relate the parties' performance back to the date that the contract should have been performed." (*Id.* at p. 389.)[2]

On remand, the trial court determined that the reasonable date on which the contract should have been performed was December 26, 2011, and granted Petrolink an offset for rents that it had paid after that date, while also awarding Lantel compensation for its loss of use of the fair market value.

Petrolink now appeals from the judgment entered by the trial court on remand from *Petrolink I.* According to Petrolink, the trial court erred on remand in: (1) "applying the future income stream to the fair market value price of the subject property" (boldface and capitalization omitted); (2) "not awarding Petrolink interest on $100,845 of the $889,845 it deposited in escrow on February 8, 2016"; (3) "finding that Petrolink is not entitled to interest on the rent money it paid Lantel" (boldface and some capitalization omitted); and (4) "denying Petrolink the value of loss of the use of the funds it was required to post as a bond from November 28, 2016 to October 22, 2018." Finally, Petrolink contends that the trial court erred in admitting certain of Lantel's expert evidence, and asserts that this error must be corrected in the event that this court remands the matter to the trial court again for further proceedings.

We conclude that Petrolink's arguments are without merit and affirm the judgment.

---

[2]     We clarified that the trial court could "undertake whatever further proceedings may be necessary to address these matters." (*Petrolink I, supra,* 21 Cal.App.5th at p. 389.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

We take the following factual background from our opinion in *Petrolink I, supra*, 21 Cal.App.5th at pages 380–381:

> "The parties were signatories to a lease that was originally entered into by Lantel and Tosco Corporation in 1998. The lease pertained to a parcel of land near an interchange between Interstate 15 and Highway 138 in San Bernardino County. Petrolink eventually obtained a leasehold interest through various assignments to different entities.

> "The lease contained a provision granting the tenant the right to purchase the property at any time, for fair market value, after an initial 10-year term had elapsed. The specific language of the purchase option provision is as follows:

> " '21. RIGHT TO PURCHASE. As long as the Tenant is not in default of this Agreement, Tenant will have an option to purchase the property at any time after the first Ten (10) years of the lease term at a price equal to the fair market value of the property based on an appraisal.'

> "On August 25, 2011, Petrolink mailed a letter to Lantel indicating its desire to exercise the purchase option in the lease, and asking Lantel to provide it with an appraisal regarding what Lantel believed to be the fair market value of the property.[ ] According to the trial testimony of one of Lantel's principals, Lantel understood Petrolink's August 25, 2011 letter to be an exercise of its option to purchase the subject property.

> "Lantel hired an appraiser to determine the fair market value of the property. Lantel's appraiser concluded that the fair market value of the property was $1,615,000. Based on the appraisal, Lantel offered to sell Petrolink the property for $1,615,000.

"In response, Petrolink offered to purchase the property for $320,000, based on an appraisal that Petrolink had separately commissioned. Lantel did not respond to Petrolink's offer of $320,000. Petrolink sent another letter to Lantel, this time offering to purchase the property for 'roughly' $486,000.

"In a letter dated October 25, 2011, Petrolink proposed that the parties obtain a third appraisal of the property in order to determine the fair market value. Lantel did not respond to Petrolink's proposal that the parties share the cost of obtaining a third appraisal."

B. *Procedural background*

1. *The initial trial court proceedings*

On January 24, 2012, Petrolink sued Lantel for specific performance, asserting that Petrolink had exercised its option to purchase the property and had agreed to purchase the property at a price equal to its fair market value, which Petrolink contended was $320,000, based on an appraisal that it had obtained. (*Petrolink I, supra*, 21 Cal.App.5th at p. 381.)

Lantel filed a cross-complaint in which it alleged breach of contract and breach of the covenant of good faith and fair dealing with respect to the lease, and also asserted a claim for specific performance, arguing that Petrolink was the party that had wrongfully refused to consummate the sale of the property. Lantel alleged that Petrolink had " 'provided notice to [Lantel] that it was exercising its right to purchase Parcel 1 pursuant to Section 21 of the Lease,' " and that Lantel was " 'willing, ready, and able to perform all conditions, covenants, obligations and promises required of it under the Lease, including selling' " the property to Petrolink for the value established by Lantel's appraisal, which was $1,615,000.00. (*Petrolink I, supra*, 21 Cal.App.5th at p. 381.)

6

A bench trial was held, and the court heard testimony from the parties' appraisers, and well as from an independent appraiser whom the trial court had appointed as a court expert pursuant to Evidence Code section 730. (*Petrolink I, supra*, 21 Cal.App.5th at p. 381.) The court's expert was asked to provide his conclusion regarding the fair market value of the property as of August 25, 2011, the date on which Petrolink exercised the purchase option. (*Ibid*.) The court's expert estimated that the value of the property to the tenant of the property as of August 25, 2011 was $789,000, but further testified that if a third party, rather than the tenant, were seeking to purchase the property, there would be " 'bonus rent' " in the amount of $3,735 per month, which he defined as the difference between fair market rent and the rent that Petrolink was paying under the lease. (*Ibid*.) The court's expert estimated that the value of the " ' "bonus rent" ' " would be an additional $100,845, for a total fair market value of $889,845 as of August 25, 2011. (*Ibid*.)

In closing argument, Petrolink argued that it was entitled to a judgment that included an offset for the rents it had paid to Lantel after exercising the purchase option, such that the purchase price determined by the trial court to be the fair market value would " 'be reduced by what Petrolink has paid in rent from 30 days following the exercise of the purchase [option] up until today.' " (*Petrolink I, supra*, 21 Cal.App.5th at p. 382.)

Lantel argued that the purchase option in the lease was ambiguous, and that the trial court should consider extrinsic evidence that would establish that the intent of the provision was that Lantel would unilaterally determine the property's fair market value. (*Petrolink I, supra*, 21 Cal.App.5th at p. 382.) Lantel argued in the alternative that if the court determined that the appraisal that Lantel had proffered did not represent the

7

fair market value of the property, then the court must consider the value of the lease between Lantel and Petrolink in determining the fair market value, which was something that Petrolink's appraiser had not included in his analysis. (*Ibid.*) Lantel's final position was that if the court decided to rely on the appraisal prepared by the court's appointed expert, then the court should include the additional $100,845 in " ' "bonus rent" ' " calculated by that appraiser, to bring the total fair market value of the property to $889,845 as of August 25, 2011. (*Ibid.*)

The trial court found that " '[o]n August 25, 2011, Petrolink timely exercised its option to purchase the Property agreeing to pay the fair market value of the property based upon appraisal,' " and further found that Petrolink had never been in default under the lease. (*Petrolink I, supra,* 21 Cal.App.5th at p. 383.) The court entered judgment in favor of Petrolink on its specific performance cause of action, but denied Petrolink relief on its claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Ibid.*) The court further concluded that " 'Petrolink is not entitled to a set-off of any of these [$396,750 in rent] payments against the purchase price.' " (*Ibid.*) The court determined that Lantel was to convey the property to Petrolink by grant deed, free and clear of all encumbrances, upon the receipt of $889,854 from Petrolink, and thereby determined that the "fair market value" of the property was the value of the property to the *market*—i.e., the value to a third party, and not the value to the lessee. (*Id.* at pp. 383, 382, fn. 6.) Petrolink appealed from the judgment; Lantel did not. (*Id.* at p. 383.)

2. *The appeal in* Petrolink I

While Petrolink's appeal was pending, Lantel filed a motion requesting that the trial court require Petrolink to post a bond for the future rent that

8

would accrue under the Lease during the appeal. Petrolink opposed the bond requirement. The court granted Lantel's motion and ordered Petrolink to post a bond in the amount of $273,757.50. Petrolink posted the bond on November 28, 2016.

In its appeal from the trial court's judgment, Petrolink's only contention was "that it was entitled to an offset for the rents that it paid to Lantel after it exercised its purchase option under the lease and during the pendency of this litigation. According to Petrolink, upon its valid exercise of the purchase option, the lease was transformed into a contract of sale, thereby extinguishing any landlord-tenant relationship, as well as any right the landlord had to further rent." (*Petrolink I, supra*, 21 Cal.App.5th at p. 383, italics omitted.)

Petrolink did not challenge the trial court's determination that the fair market value of the property was $889.854.

In our opinion in *Petrolink I, supra*, 21 Cal.App.5th at page 388, we agreed with Petrolink that it was entitled to an offset for the rents that it had paid to Lantel through the pendency of the litigation. We further concluded that, while Petrolink was entitled to a credit to offset the rents that it had continued to pay to Lantel, Lantel was "entitled to some amount of compensation to account for the fact that it did not have use of the purchase funds that it would have had in its possession from the time the purchase and sale contract reasonably should have been performed to the entry of judgment." (*Ibid*.)[3]

---

[3] We explained that "[g]ranting a buyer the value of the profits and rents from the property from the time a transaction should have been consummated and adjusting this amount by the value of the seller's lost use of the purchase money ' "is designed to relate the performance back to the contract date of performance and to adjust the equities between the parties

9

We reversed the judgment of the trial court and remanded the matter with limited directions to the trial court "to determine the reasonable date on which the contract for purchase and sale should have been performed." In addition, we directed the court "to consider what financial adjustments must be made in order to relate the parties' performance back to the date that the contract should have been performed," in light of our conclusions that Petrolink was entitled to an offset for the rents it had paid, and Lantel was entitled to loss of use of the purchase proceeds, from the time the contract should have been performed. (*Petrolink I, supra*, 21 Cal.App.5th at p. 389.)

3. *Proceedings on remand*

After the remittitur issued, the trial court held a hearing over two nonconsecutive days. The parties offered testimony and reports submitted by their respective experts. The parties also provided briefs addressing the issues that they believed were in dispute on remand.

By this point in the proceedings, Lantel had accepted Petrolink's expert's opinion that the reasonable date on which the transaction should have closed was December 26, 2011, and also had accepted Petrolink's expert's opinion that the amount to be offset against the purchase price to account for excess rents paid by Petrolink was $390,137.50. The parties continued to contest the value of Lantel's loss of use of the purchase proceeds, as well as additional relief that Petrolink claimed, on remand, it was entitled to receive.

On remand, Petrolink sought (1) a reduced purchase price of $789,000, which was the fair market value less the "bonus rent" calculated by the trial court's expert or, alternatively, a reduction in the amount of "bonus rent" to

_____

because of the delayed performance . . . ." [Citation.]' " (*Petrolink I, supra*, 21 Cal.App.5th at pp. 388–389.)

be applied to the purchase price; (2) interest on what it claimed was an "overpayment" of the purchase price, i.e., the amount of the "bonus rent" that the court included in calculating the fair market value of the property, which Petrolink had placed in an escrow account sometime in 2016; (3) interest on the rents that it had paid through the pendency of the litigation, for which it was receiving an offset against the purchase price; and (4) additional interest on the bond that it had posted in order to stay the judgment pending appeal.

Petrolink further argued on remand that Lantel should receive no credit for the loss of use of the purchase proceeds because, in Petrolink's view, Lantel was solely at fault for the purchase not having been completed in 2011. In the alternative, Petrolink argued that if Lantel was entitled to any credit for the loss of use of the purchase funds, Lantel's loss of use credit should be capped at the amount of rent that Petrolink had paid through the pendency of the litigation and for which Petrolink would be receiving as an offset against the purchase price—i.e., $390,138. Petrolink requested a final purchase price of either $49,530 (with $0 to Lantel for loss of use) or $439,668 (with a capped amount of $390,138 for Lantel's loss of use).

Lantel objected to any additional credit to Petrolink beyond the offset for rents that Petrolink had paid through the pendency of the proceedings. Lantel argued that there should be a three-step process to determine the final sale price: the trial court should (1) determine the date on which the sale should have occurred, (2) determine the amount of rent that Petrolink paid after that date in order to give Petrolink an offset for that amount, and finally, (3) determine the value of Lantel's loss of use of the sale proceeds after the date on which the sale should have occurred. Lantel further argued that any argument regarding the fair market value of the property was foreclosed, because the trial court had determined the fair market value of

11

the property in the original judgment and Petrolink had not challenged the court's calculation of the fair market value of the property in its appeal in *Petrolink I.*

The parties' experts provided conflicting opinions as to the value of Lantel's loss of use of the purchase proceeds. Lantel's expert opined that Lantel's loss of use should be valued at $577,000. Petrolink's expert opined that Lantel's loss of use was $448,688. However, he also provided a value capped at $390,138—the amount of the offset that Petrolink would receive, based on Lantel purportedly being at fault for the delay in consummating the sale.

In the trial court's Statement of Decision, the court stated "that the area of contention is the 'amount of compensation owed to Lantel to account for its loss of use of the $889,854' " and noted that the other issues, such as the date by which the sale should have been completed and the amount of the rent offset to Petrolink were not in dispute.

With respect to Petrolink's contention that the trial court should not include any "bonus rent" in the fair market valuation of the property, the court concluded that Petrolink should have raised that argument in its prior appeal. The court also determined that Petrolink was not entitled to reimbursement for any litigation-related expenses or to ongoing damages after February 2016, including, among other things, additional interest on the bond that it was required to post pending the prior appeal.

With respect to Lantel's loss of use of the sale proceeds, the trial court relied on Petrolink's expert's testimony, concluding that the value of Lantel's loss of use should be determined by applying an interest rate of 10%, resulting in the "uncapped" amount of $448,688. The trial court concluded that the fair market value of the property, less the credit due to Petrolink for

the rents it had paid, plus the loss of use of the sale proceeds due to Lantel resulted in a net purchase price of $948,404. Petrolink filed objections to the trial court's Statement of Decision.

Lantel prepared a proposed amended judgment, to which Petrolink also objected. The trial court overruled Petrolink's objections to the proposed amended judgment and entered the amended judgment on September 5, 2019. The amended judgment requires specific performance of the purchase and sale contract for a final purchase price of $948,404

Petrolink filed a timely notice of appeal.

III.

DISCUSSION

A. *The trial court did not err in its accounting on remand*

1. *The determination of the fair market value of the property was final as of the time the remittitur issued in* Petrolink I

Petrolink contends that the trial court erred in including any amount of "bonus rent" in determining the fair market value of the property. According to Petrolink, the court should have excluded the $100,854 future rental stream calculated and testified to by the trial court's expert, from the fair market value determination. Even though the trial court determined, prior to the original judgment, that the "fair market value" of the property was the value of the property to a *third party*, and not its value to *Petrolink*, as the lessee, Petrolink argued on remand and continues to argue on appeal that because "there would have been no 'future rental stream' paid by [Petrolink] through September 30, 2013," the court should not have included the "bonus rent" in arriving at the fair market value of the property.[4]

_____

4    As we explained in footnote 6 in *Petrolink I, supra*, 21 Cal.App.5th at page 382: "In concluding that $889,854 was the fair market value of the

13

In essence, Petrolink suggests that this court's reversal in *Petrolink I* of that portion of the judgment in which the trial court denied Petrolink any offset for the rents that it had paid to Lantel through the pendency of the litigation, and our remand to the trial court, had the effect of reopening all of the issues decided in the original judgment, including the trial court's determination of the fair market value of the property. On remand, the trial court rejected Petrolink's contention that the court should reduce its determination of the fair market value, concluding that the fair market value determination had been made prior to the original judgment and was not disturbed by this court's opinion in *Petrolink I*.

In considering whether the trial court properly rejected Petrolink's attempt to revisit the fair market value determination on remand after the first appeal, we apply the standards for considering whether a portion of a judgment is separately appealable and conclude that the trial court was correct in concluding that the fair market value determination was final by the time the case was remanded to it after *Petrolink I*.

"Ordinarily [an appeal from a specific portion of a judgment] would leave the parts not appealed from unaffected, and it would logically follow that such unaffected parts must be deemed final, being a final judgment of the facts and rights which they determine. The decisions are to the effect that upon such an appeal where the parts not appealed from are not so intimately connected with the part appealed from that a reversal of that part would require a reconsideration of the whole case in the court below, the

_____

property in August 2011, the trial court was persuaded by Lantel's argument that the fair market value would be the value of the property *to the market*—i.e., to third parties, and not simply to the lessee—and that therefore, the fair market value should include the value of the ' "bonus rent" ' that the court's [appointed] expert appraiser discussed." (Italics added.)

14

court upon such partial appeal can inquire only with respect to the portion appealed from." (*Whalen v. Smith* (1912) 163 Cal. 360, 362–363.) Thus, "the general principle" is "that an appeal from a *distinct and independent part of a judgment* does not bring up the other parts for review in the appellate court, and that a reversal of the part appealed from does not affect the portions not dependent thereon, but that they will stand as final adjudications . . . ." (*Id.* at pp. 363–364, italics added.)

In its opening brief in *Petrolink I*, Petrolink identified a single issue in its "Statement of Issues on Appeal": "Did the trial court err in finding that Petrolink is not entitled to recover rents it paid to Lantel following Petrolink's exercise of the purchase option in the lease agreement?" Petrolink did not challenge the trial court's determination that $889,854 was the fair market value of the property at the time Petrolink exercised the purchase option. In our opinion in *Petrolink I*, we accepted as final the trial court's determination in that regard. Our decision that Petrolink was entitled to a credit for the amount of rents it had paid through the pendency of the litigation had no bearing on and *did not affect* the determination of the fair market value of the property at the time Petrolink exercised the purchase option. It is thus clear that the question of the fair market value of the property at the time the purchase option was exercised and the question whether Petrolink was entitled to an offset for the rents it continued to pay to Lantel after that point in time were severable issues and were therefore separately appealable. If Petrolink had wanted to challenge the trial court's determination of the fair market value of the property, it was required do so in its appeal from the original judgment. Because neither party challenged the trial court's determination of the fair market value of the property, that determination became final once the time to appeal from that judgment

15

expired. (See *Gonzales v. R. J. Novick Construction Co.* (1978) 20 Cal.3d 798, 804–805.)

Additionally, there was nothing in this court's directions to the trial court on remand that would suggest that the trial court was to reconsider the fair market valuation of the property. "Where a reviewing court has remanded a matter to the trial court with directions ' . . . the trial court . . . is bound to specifically carry out the instructions of the reviewing court. . . . [Any] material variance from the explicit directions of the reviewing court is unauthorized and void.' " (*Coffee-Rich, Inc. v. Fielder* (1975) 48 Cal.App.3d 990, 998.) As noted, Petrolink's only contention in the prior appeal was that the trial court had erred in refusing to credit it with an offset against the purchase price for the rents that Petrolink had continued to pay through the pendency of the litigation between the parties. Petrolink did not challenge the trial court's determination of the fair market value of the property. After having concluded that Petrolink was entitled to an offset and that Lantel was entitled to the value of loss of use of the purchase proceeds, we directed the trial court "to determine the reasonable date on which the contract for purchase and sale should have been performed, and . . . to consider what financial adjustments must be made in order to relate the parties' performance back to the date that the contract should have been performed." (*Petrolink I, supra*, 21 Cal.App.5th at p. 389.) The disposition did not include a directive for the court to reconsider the fair market value of the property at the time the purchase option was exercised because that issue was not raised in the prior appeal. It is thus clear that the trial court did not err in rejecting Petrolink's belated attempt to have the fair market value of the property adjusted downward on remand; such an adjustment would have been outside the scope of the trial court's authority on remand.

2.  *The trial court properly declined to award Petrolink interest for loss of use of $100,845 that Petrolink contends should not have been included in the $889,845 fair market value*

Petrolink contends that "[b]ecause the trial court erred by including the future income stream in the purchase price, it also erred by not awarding Petrolink interest on $100,845 of the $889,845 it deposited in escrow on February 8, 2016." As we have concluded, however, because the fair market value determination was final when the original judgment was entered and the time to appeal that portion of the judgment had elapsed, the trial court properly declined to reduce the fair market value by $100,845 on remand, as Petrolink requested. As a result, the trial court also did not err in declining to award Petrolink interest on the $100,845.

3.  *The trial court correctly determined that Petrolink is not entitled to interest on the rent money that it paid to Lantel after exercising the purchase option*

Petrolink also contends that the trial court erred in not awarding it interest on the "rent money it paid to Lantel [to] which Lantel was not entitled." Under Petrolink's theory, because it continued to pay Lantel rent through the pendency of the litigation and because this court determined that Petrolink was ultimately entitled to an offset for those rent payments, it must follow that Petrolink should also be "allow[ed]" to "recover loss of use of rent money it paid, just as Lantel is entitled to the loss of use of the fair market value of the subject property price."

Petrolink cites no authority for its position, and we find this contention to be without merit. Although it is true that Petrolink continued to pay money to Lantel in the form of rent, Petrolink was not unfairly deprived of the use of those funds during that time. In receiving an offset for those funds against the purchase price, the rent money that Petrolink paid to Lantel

17

became, effectively, part of the purchase price that Petrolink paid for the property. In other words, if the purchase and sale contract had been performed on December 26, 2011, the $390,137.50 in excess rents that Petrolink paid to Lantel after that date would have been part of the purchase price of the property and thus, would not have been Petrolink's to use for other purposes. (Cf. *Ellis v. Mihelis* (1963) 60 Cal.2d 206, 222 [purchaser not entitled to interest on funds placed in escrow with notice to the seller because purchaser "would have been deprived of the use of that money if the contract had been timely performed"].) Petrolink argues that *Ellis* is not relevant because the rent money was not placed in an escrow account with notice to Lantel that it would be applied to the purchase price. However, there is no material difference between funds placed in escrow and later applied to a purchase, and the offset that Petrolink received against the purchase price. We therefore conclude that the trial court properly determined that Petrolink is not entitled to recover interest based on its loss of the use of the rental payments it continued to make through the pendency of the court proceedings.

    4.   *The trial court did not err in denying Petrolink the value of loss of the use of the funds that it posted as a bond*

Petrolink seeks an offset for additional interest that it claims it could have received on the value of an appeal bond that the trial court ordered Petrolink to post under Code of Civil Procedure section 917.4.[5]

---

[5]    Code of Civil Procedure section 917.4 provides: "The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property which is in the possession or control of the appellant or the party ordered to sell, convey or deliver possession of the property, unless an undertaking in a sum fixed by the trial court is given that the appellant or party ordered to sell, convey or deliver possession of the

18

As background, Lantel requested that the trial court impose a bond requirement once Petrolink indicated its desire to appeal the original judgment. Although Petrolink opposed imposition of an appeal bond, the trial court concluded that the posting of a bond in the amount of $273,757.50 was appropriate. Petrolink did not seek review of the order imposing the bond requirement via writ petition or otherwise. Upon the issuance of the remittitur in *Petrolink I*, Petrolink's bond was refunded. Petrolink also received interest on the bond, at an unspecified rate that was less than 10 percent per annum, in the amount of $3,206.77. In the proceedings on remand, Petrolink requested that the trial court credit it with interest at a rate of 10 percent per annum for loss of use of the value of the bond that it was required to post during the appeal.

The trial court concluded that Petrolink is not entitled to "litigation-related expenses or ongoing damages" after February 2016, and rejected Petrolink's request for additional interest on the funds used to post the bond. Lantel sought no litigation-related expenses, and was awarded none.

Petrolink has provided no authority to support its contention that it is entitled to additional interest, above what it already received, on the bond that the trial court ordered it to post, and we have found none. Further, Petrolink did not challenge the trial court's imposition of the bond

_____

property will not commit or suffer to be committed any waste thereon and that if the judgment or order appealed from is affirmed, or the appeal is withdrawn or dismissed, the appellant shall pay the damage suffered by the waste and the value of the use and occupancy of the property, or the part of it as to which the judgment or order is affirmed, from the time of the taking of the appeal until the delivery of the possession of the property. If the judgment or order directs the sale of mortgaged real property and the payment of any deficiency, the undertaking shall also provide for the payment of any deficiency."

19

requirement at the time that the trial court ordered it. Under these circumstances, we conclude that the trial court did not err in determining that Petrolink is not entitled to additional interest on the amount of the bond that it posted while it pursued the initial appeal.

B. *Petrolink's contention that the trial court erred in admitting Lantel's expert's testimony is moot*

Petrolink argues that the trial court erred in admitting Lantel's expert's "testimony, expert report, and printout." According to Petrolink, Lantel's expert's opinions were "inadmissible pursuant to *People v. Sanchez*" and should not have been considered by the court. Lantel points out in response to this argument that Petrolink cannot demonstrate any prejudice from the admission of Lantel's expert's testimony and report because the trial court relied "entirely" on Petrolink's expert's opinions in conducting the accounting between the parties. In reply, Petrolink concedes that its argument with respect to Lantel's expert's opinions is relevant only if this court remands the matter to the trial court for further proceedings.[6] Because we have determined that the trial court did not err in completing its accounting between the parties on remand from the appeal in *Petrolink I*, there is no need to remand the matter to the trial court a second time. Petrolink's evidentiary challenge to the admission of Lantel's expert's testimony and report is therefore moot.

---

[6] Specifically, Petrolink contends that the possible prejudice to it is as follows: "Should this Court find that Petrolink is entitled to recover the amounts requested, reverse the Amended Judgment, and remand the case to the trial court, the inadmissible report and testimony will still be in evidence and the trial court may still rely on the inadmissible evidence."

IV.

DISPOSITION

The judgment of the trial court is affirmed.  Lantel is entitled to its costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

GUERRERO, J.